NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HORACIO JOSE SERRANO,<br><br>          Petitioner,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>          Respondent. | Civ. No. 04-4289 (WGB)<br><br>O P I N I O N |

APPEARANCES

Horacio Jose Serrano
L.S.C.I. Allenwood
P.O. Box 1000
White Deer, Pennsylvania 17887

     Pro Se Petitioner

Christopher J. Christie
United States Attorney for the District of New Jersey
970 Broad Street
Suite 700
Newark, NJ 07102
By:  Christopher J. Gramiccioni
     Assistant U.S. Attorney

     Counsel for Defendant

**BASSLER, SENIOR DISTRICT JUDGE:**

     Horacio Jose Serrano ("Serrano") is a prisoner confined at the Low Security Correctional Institution in White Deer, Pennsylvania. Proceeding pro se, Serrano timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 on or

about September 2, 2004,[1] based on ineffective assistance of counsel and breach of the plea agreement.  The United States of America ("Government") filed an Answer opposing the Petition on October 27, 2004.  For the reasons set forth, the petition for habeas corpus relief is **denied**.

I.   FACTUAL BACKGROUND

On January 10, 2003, Serrano and co-defendant Maria Arroyave ("Arroyave") were arrested in possession of 2.112 net kilograms of heroin.  On February 21, 2003, Serrano signed a plea agreement with the United States Attorney for the District of New Jersey, in which he waived his right to file an appeal, collateral attack, writ, or motion after sentencing, including a motion under 28 U.S.C. § 2255.  On April 14, 2003, Serrano waived his indictment and pled guilty to conspiracy to distribute and possess with intent to distribute more than one kilogram of heroin, contrary to 21 U.S.C §§ 841(a)(1) and 841(b)(1)(A), in violation of 21 U.S.C. § 846.  On September 22, 2003, this Court sentenced Serrano to 46 months imprisonment with five years supervised release, a fine of $600 and a special assessment of $100.  Serrano now brings this petition pursuant to 28 U.S.C. §

---

[1] In Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998), the Third Circuit held that "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court."  Serrano executed his petition on August 30, 2004, and the Clerk of this Court did not receive it until September 2, 2004.

2255, alleging ineffective assistance of counsel by his attorney Richard Verde ("Verde") and breach of the plea agreement by the Government.

II.  DISCUSSION

   A.   Standard of Review

28 U.S.C. § 2255 provides relief to a federal prisoner seeking release from incarceration on any one of the following grounds: (1) the imposed sentence violates the Constitution or laws of the United States, (2) the court did not have jurisdiction to impose the sentence, (3) the sentence exceeds the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.  See 28 U.S.C. § 2255.  A petition for habeas relief under § 2255 will be granted "only if the sentence results in a 'fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" United States v. Cannistraro, 734 F. Supp. 1110, 1119 (D.N.J. 1990) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L. Ed. 2d 417 (1962)).

   B.   Waiver of Right to Appeal

As an threshold matter, the Court must determine whether Serrano's waiver of appeal must be enforced.  Serrano's plea agreement stipulated that "this office and Horatio [sic] Jose Serrano waive certain rights to file an appeal under 18 U.S.C. §

3742 or a motion under 28 U.S.C. § 2255." (Plea Ag. at 4.)  The Third Circuit Court of Appeals has held that "[w]aivers of appeals, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice." United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001).  In order to determine whether there has been a "miscarriage of justice," a court should consider "the clarity of the error, its gravity, its character...the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." Id. at 573 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

 Serrano does not challenge the validity of the plea agreement nor does he argue that his waiver was involuntary.  Rather, Serrano claims that the waiver is void because: (1) the Government breached the plea agreement during sentencing; and (2) his attorney did not provide him with effective assistance of counsel.  The Court addresses the merits of the underlying charges in both claims in order to determine whether enforcing the waiver will result in a miscarriage of justice.

 C. Breach of the Plea Agreement

 Serrano alleges that the Government breached the plea agreement in two ways: (1) by arguing for an upward departure during sentencing using information prohibited under U.S.S.G. §

4

1B1.8 (Mot. at 5); and (2) by failing to fully disclose to the court all aspects of Serrano's cooperation (Pet'r Mem. Supp. at 7).

       1.   The Government's alleged request for an upward departure

At Serrano's sentencing, the Government stated:

> I would bring one point to the Court's attention in fashioning an appropriate sentence within the Guidelines. The Defendant in this case, he brought up the product that was concealed in a plastic-like state from Florida up to New Jersey and then, in essence, served as the chemist who particularly engaged in the chemical extraction process to return that hard-like plastic substance back to a power-like [sic] state.  I think just very briefly, that's a different situation than courts frequently deal with, having not only the person be the courier but the person who serves as the individual who extracts the product to make it sales worthy from that point after.  Other than that, I submit to the Court's discretion.

(9/22/03 Senten. Tr., at 9:24-10:12)

Serrano argues that the Government "breached the Plea Agreement with this [sic] comments to the Court, seeking and [sic] upward departure or adjustment in the [sentencing] Guidelines."  (Pet'r Mem. Supp. at 6.)  Serrano cites United States v. Moscahlaidis, 868 F.2d 1357 (3d Cir. 1989), in support of his argument.  In Moscahlaidis, the Third Circuit Court of Appeals held that the Government breached its promise in the plea agreement to "take no position" on the appropriate sentence.  Id. at 1360.  Although the Government reserved the right to inform the sentencing judge of the "full nature and extent," id. at 1362, of the petitioner's activities, the Government exceeded

5

that right by drawing conclusions about the petitioner's character.  For example, the Government's sentencing brief included comments such as, "[t]his demonic pursuit demonstrates Moscahlaidis' utter contempt for the welfare of his fellow man."  Id. at 1359.

The facts presented in Moscahlaidis are distinguishable from the ones presented here.  Here, the Government also reserved the right to inform the Court of the "full nature and extent" of Serrano's activities.  (Plea Ag. at 4.)  Unlike Moscahlaidis, however, the Government explicitly reserved additional rights:

> this Office reserves its right to take any position with respect to the appropriate sentence to be imposed on Horatio [sic] Jose Serrano by the sentencing judge . . . and to provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise, including information provided by Horatio [sic] Jose Serrano before and after signing this agreement.

Id.

The Government never agreed to "take no position" on an appropriate sentence for Serrano as in Moscahlaidis, instead explicitly reserving the right to "take any position."  Moreover, the Government's right to provide "information relevant to sentencing, favorable or otherwise" permitted the Government to assist the Court in determining the extent of the downward departure.  Even if the Government had not reserved these additional rights, the Government's statement concerning Serrano's role as both courier and extractor of the cocaine fell

within the Government's right to reveal the full nature and extent of Serrano's activities.  The Government's comments were not like the conclusory opinions at issue in Moscahlaidis. Instead, they were factual comments relating to Serrano's role in the conspiracy.

As a related matter, Serrano also argues that the Government statement included self-incriminating information that Serrano provided to the Government pursuant to the plea agreement. Serrano claims that this was improper because the plea agreement explicitly provides that: "[i]f as part of this obligation to cooperate, Horatio [sic] Jose Serrano provides self-incriminating statements, the statements shall be subject to the protections, terms, and conditions in U.S.S.G. §§ 1B1.8(a) & (b)."  (Plea Ag. at 2.)

Serrano's argument fails, however, because § 1B1.8(b)(1), permits the Government to use information "known to the government prior to entering into the cooperation agreement." Here, the Government had substantially the same information based on the January 15, 2003 Criminal Complaint Affidavit signed by Detective James Malone ("Malone Affidavit").  According to the Malone Affidavit, Serrano and Arroyave both knew that they were processing heroin that Serrano obtained from various sources. (Malone Aff. at Attach. A.)  Because Serrano did not sign the plea agreement until February 21, 2003, the Government knew the

7

information well before entering into the plea agreement.

The plea agreement further stipulated that Serrano "waives any right to claim that statements made by her [sic] before or after the execution of this agreement...should be suppressed under that prior agreement or under Fed. R. Evid. 410, Fed. R. Crim. P. 11(e)(6), U.S.S.G. § 1B1.8, or otherwise. (Plea Ag. at 2-3.) Therefore, not only did the Government know the information prior to the agreement, Serrano waived his right to suppress such information. Although the Government did use information offered by Serrano regarding the conspiracy charge, the Government acted within its right to provide information relevant to sentencing, "favorable or otherwise." (Plea Ag. at 4.) The Court denies Serrano's claim of breach of the plea agreement by using self-incriminating information to move for an upward departure.

        2.    Claim of failing to report full extent of Serrano's cooperation

Serrano further claims that the Government breached the plea agreement by failing to inform this Court about the full extent of his cooperation. Indeed, Serrano correctly points out that this Court noted at the sentencing that the Government did not address the reliability of Serrano's information nor the risk of injury to Serrano and his family in cooperating. (9/22/03 Senten. Tr., at 6:17-7:2.) As a result, Serrano alleges that

"[t]he silence of the prosecutor at sentencing in relation to the cooperation deprived the Petitioner from receiving a 5 point down-ward [sic] based on the 5K1."  (Pet'r Mem. Supp. at 7).

The Government must strictly adhere to the promises made with defendants in a plea agreeement.  <u>Santobello v. New York</u>, 404 U.S. 257, 262 92 S.Ct. 495, 499, 30 L. Ed. 2d 427 (1971); <u>United States v. Martin</u>, 788 F.2d 184, 187 (3d Cir. 1986).  "When a criminal defendant claims that the government breached its plea agreement, the first step is to define what the government agreed to do."  <u>Dunn v. Colleran</u>, 247 F.3d 450, 458 (3d Cir. 2001).  The plea agreement states, "this Office may inform the sentencing judge and the United States Probation Office of...the full nature and extent of Horatio [sic] Jose Serrano's cooperation with this Office and when such cooperation commenced."  (Plea Ag. at 4).  The language of the agreement reveals that the Government retained the right to decide whether full disclosure of Serrano's cooperation was warranted.  This discretionary right is made explicit in the plea agreement as well.  "The determination whether Horatio [sic] Jose Serrano has fully complied with this agreement and provided substantial assistance to the Government rests solely in the discretion of this Office."  (Plea Ag. at 2.)

Because the Government did not make a definite promise to inform the Court of Serrano's cooperation, the Court denies Serrano's claim.  Therefore, Serrano's waiver of his appeal

9

rights is upheld with respect to all claims based on breach of the plea agreement by the Government.

  D. Ineffective Assistance of Counsel

    1. Standard of Review

  The Sixth Amendment right to assistance of counsel means that a person has a right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970); see also Mott v. United States, No. Civ.A. 99-251 , 1999 WL 410368, at *2 (E.D. Pa. 1999) (citing United States v. Moscony, 927 F.2d 742, 748 (3d Cir. 1991)).  The standard for demonstrating ineffective assistance of counsel is difficult to satisfy.  See Strickland v. Washington, 466 U.S. 668, 687 (1984).  To meet the standard, a petitioner must show: (1) that the attorney's performance was deficient; and (2) that the performance prejudiced the petitioner's defense.  Id.

  An attorney's performance may only be considered deficient upon a showing by the petitioner that it failed to meet an "objective standard of reasonableness."  Id. at 688.  "'[C]ourts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential.'"  Roe v. Flores-Ortega, 528 U.S. 470, 477, 120 S.Ct. 1029, 1034-1035 (2000) (internal citations omitted).

      2.   Claim of failing to appeal

Serrano alleges that he specifically asked Verde to file an appeal, which Verde disregarded. (Pet'r Aff. Supp. at 3). He alleges that "not only did counsel not file an appeal on my behalf, but he did not recalled [sic] any conversation about an appeal. Stating that at no time did you request that I appeal your sentence." (Pet'r Aff. Supp. at 3.)

In <u>Roe v. Flores-Ortega</u>, the Supreme Court held that the <u>Strickland</u> test for determining whether counsel was constitutionally ineffective also applies to the failure to file a notice of appeal. 528 U.S. 470, 477, 120 S.Ct. 1029, 1034 (2000). It is well established that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." <u>Id.</u>, 120 S.Ct. at 1036. In deciding whether counsel had a constitutional duty to consult with the client regarding an appeal, courts "must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." <u>Roe</u>, 528 U.S. at 480, 120 S.Ct. at 1036.

Here, not only did Serrano sign a plea agreement expressly waiving all rights to appeal, but the Court, as discussed above, finds that the Government did not breach the plea agreement. Moreover, "it is consistent with Supreme Court precedent to

11

enforce a waiver of § 2255 rights expressly contained in a plea agreement when the collateral attack does not challenge counsel's representation in negotiating or entering the plea or the waiver." United States v. Cockerham, 237 F.3d 1179, 1187 (10th Cir. 2001). Consequently, Verde acted reasonably in deciding not to appeal. "As Petitioner waived his rights to appeal, no basis existed on which his counsel could appeal. Thus, the Court finds that counsel's performance was reasonable under prevailing professional norms." United States v. Shedrick, CRIM 02-523 2004 WL 1169989, at *4 (E.D.Pa. Apr. 30, 2004). The Court, wholly within its discretion, decided to downward depart by four levels, rather than the five that Serrano expected. Therefore, because the claim of failing to file an appeal does not meet the deficient performance standard in Strickland, the Court denies Serrano's claim.

        3.   Claim of failing to appeal conspiracy charge

Serrano alleges that because he appeared alone in the offense, he was wrongfully charged with conspiracy. (Pet'r Mem. Supp. at 10.) He asserts that the Pre-Sentence Investigation report states that there are no co-defendants in this case, rendering his charge incognizable. Id. He therefore claims ineffective assistance of counsel for being "improperly advised to plea guilty, to said charge." (Pet'r Aff. Supp. at 3).

The Government asserts that this conspiracy charge is the

only claim that could withstand Serrano's waiver of appeal.  The Court agrees with the Government.  This claim, if legitimate, survives the waiver of appeal because it attacks the very validity of the plea agreement and therefore the waiver. Cockerham, 237 F.3d at 1187; Frederick v. Warden, Lewisburg Correctional Facility, 30 F.3d 192, 193 (2d Cir. 2002).

Nevertheless, the Court finds that Serrano's conspiracy claim is unfounded.  First, impossibility is not a defense to a charge of conspiracy.  Yepes v. United States, Civ. A. No. 93-2310 1993 WL 525578 at *4 (D.N.J. Dec. 15, 1993)(holding that petitioner cannot raise the defense of impossibility even though the government informant never intended to follow through on the conspiracy plan).  "If a defendant's objective was criminal, impossibility is no defense."  Id.  Serrano does not dispute that he conspired with Arroyave to manufacture, distribute, and possess heroin.  Serrano and Arroyave were arrested in Arroyave's home for manufacturing heroin, with the intent to distribute it, thus furthering a criminal objective.  Regardless of the number of people actually named in the charge, the charge of conspiracy was appropriate.  Didenti v. United States, 44 F.2d 537, 538 (9th Cir. 1930)("To be sure, one person alone cannot commit the crime of conspiracy.  Conspiracy is a criminal partnership, and requires at least two parties in its commission, but all parties to the conspiracy need not be named in the indictment.").

Because the charge of conspiracy was appropriate, Verde was reasonable in advising Serrano to accept the charge.  Thus, the Court denies Serrano's claim of ineffective counsel based on Verde's failure to appeal the conspiracy charge.

    4.Claim of failing to object to Government's breach

 Serrano alleges Verde was "silent" while the Government breached the plea agreement, resulting in a fewer point reductions than Arroyave.  (Mot. at 5.)  The Court has already determined that there was no breach of the plea agreement by the Government and that the charge of conspiracy was correct.  Thus, Verde would not have acted ineffectively by remaining silent.[2]  The Court denies Serrano's claim of ineffective counsel due to Verde's failure to object during the alleged breach of the plea agreement.  Considering Serrano fails to meet the first part of the <u>Strickland</u> test for ineffective assistance of counsel, the second part of the test need not be reached.  Serrano's waiver stands with respect to his claims of ineffective assistance of counsel.

III. CONCLUSION

 For the foregoing reasons, Petitioner's application for a

---

[2]Verde did not in fact remain silent.  In response to the allegedly self-incriminating comments, Verde redirected the Court's attention to Serrano's cooperation: "Just as a follow-up, very briefly.  He did explain that process to law enforcement and helped inform them how that process was done.  So in trying to cooperate with them afterwards he did show them how the process did work."  (9/22/03 Senten. Tr., at 10:14-10:18.)

14

writ of habeas corpus pursuant to 28 U.S.C. § 2255 is hereby **denied**. An appropriate order follows.

                                                 /s/ William G. Bassler
                                         William G. Bassler, U.S.S.D.J.

DATED: August 30, 2005